IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br> v. <br><br> GLUNT INDUSTRIES, INC., and MERIT CAPITAL PARTNERS IV, LLC, <br><br> Defendants. | CIVIL ACTION NO. <br><br> COMPLAINT <br><br> JURY TRIAL DEMANDED |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended (Title VII), and Title I of the Civil Rights Act of 1991 to correct, remedy, and prevent unlawful employment practices and to provide appropriate relief to Charging Party Ginger Burns and a class of women who were adversely affected by such practices.

As alleged with greater particularity below, the United States Equal Employment Opportunity Commission (the Commission or the EEOC) charges that Defendants Glunt Industries, Inc. and Merit Capital Partners IV, LLC violated Title VII when they subjected Charging Party to disparate terms and conditions of employment and discharge on the basis of sex, and retaliated against Charging Party; when they subjected a class of women to disparate terms and conditions of employment and discharge on the basis of sex; and when they engaged in hiring violations on the basis of sex that adversely affected a class of women. Additionally, Defendants failed to comply with Title VII record-keeping regulations.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division, and in the Counties served by the Northern District of Ohio in Cleveland, Ohio.

3. As set forth below, Charging Party Ginger Burns filed a charge with the United States Equal Employment Opportunity Commission in Cleveland, Ohio alleging discrimination and retaliation.  The EEOC's Cleveland Field Office conducted the administrative process concerning the charge and issued the Determination and conciliation failure notice, as described below.  Documents and information concerning the violations and the class of women harmed are located and maintained in Cleveland, Ohio.

## PARTIES

4. Plaintiff, the United States Equal Employment Opportunity Commission (the EEOC or the Commission), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII.

5. At all relevant times, Defendant Glunt Industries, Inc. has continuously been a corporation doing business in the State of Ohio, including in Cuyahoga County, and has continuously had at least 15 employees.

6. At all relevant times, Defendant Merit Capital Partners IV, LLC has continuously been a corporation doing business in the State of Ohio, including in Cuyahoga County, and has continuously had at least 15 employees.

7. At all relevant times, Defendant Glunt Industries, Inc. has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

8. At all relevant times, Defendant Merit Capital Partners IV, LLC has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

9. At all relevant times, Defendants have been a covered entity/entities as defined by Title VII.

## ADMINISTRATIVE PROCEDURES

10. More than 30 days before the institution of this lawsuit, Ginger Burns filed charges with the Cleveland Field Office of the United States Equal Employment Opportunity Commission regarding alleged violations of Title VII by Defendants.

11. Defendants appeared before the Commission's Cleveland Field Office, presented their response and alleged defenses to Ginger Burns' charges, and submitted to the Cleveland Field Office a position statement and employment and hiring records.

12. On May 10, 2024, the Commission's Cleveland Field Office issued to Defendants a Determination finding reasonable cause to believe that Title VII was violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

13. On July 1, 2024, the Commission issued to Defendants a Notice of Conciliation Failure advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

14. All conditions precedent to the initiation of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

15. Defendant Glunt Industries, Inc. (hereinafter Glunt) describes itself as a Northeast Ohio company that is the most complete large-scale fabricating and machining center in the United States and that operates multiple plants totaling over 225,000 square feet of production space with more than 80 units of CNC equipment (hereinafter the Glunt plants). https://www.glunt.com/about-us.

16. Defendant Merit Capital Partners IV, LLC, also known as "Merit Capital Partners," (hereinafter Merit) purchased Glunt from founder and owner Dennis Glunt in or about 2012, after which purchase Merit functioned as an employer or joint employer relative to Glunt and its operations or as an integrated enterprise with Glunt relative to such operations, for purposes of Title VII and this Action.

17. After Merit purchased Glunt, a Board of Directors was formed through which Dennis Glunt and Merit maintained positions and management roles. Dennis Glunt continued to exercise management and control over Glunt company operations, and Merit, by and through the Board of Directors and other means, also exercised management and control over Glunt company operations.

18. At all relevant times, employment or working opportunities have been available at Defendants and the Glunt plants including work in machinist, welding, assembly, disassembly, CNC operation/programming, CAD operation, materials handling, laborer, project manager,

detailing, grinder, inspector, maintenance apprentice, maintenance, tool room attendant, and other production or plant floor positions or functions (hereinafter "production positions").

19. In April 2019, Defendants hired Charging Party Ginger Burns as their Director of Human Resources.

20. Before hiring Charging Party, Defendants concluded that Charging Party was qualified for the job for which she was hired.

21. Charging Party was the first woman to hold a Director position at Glunt, and she was the first woman to be hired for a management position at Glunt.

22. As Director of Human Resources, Charging Party's responsibilities were to include interacting with other management, with Dennis Glunt, and with Merit, about recruitment, selection, hiring, promotion, and other employment-related matters affecting staffing.

23. As Director of Human Resources, Charging Party's responsibilities were to include advising executives and management on corporate matters such a growth, development, and goals.

24. Regarding hiring, Charging Party received applications and information from job seekers and engaged with plant management regarding their consideration, selection, and hiring.

25. The multiple plants operated by Defendants were made up of production areas, also referred to as plant floor (hereinafter "production floor" or "plant floor"), where workers perform non-administrative work such as that described above in Paragraph 18.

26. At the time Charging Party was hired, Defendants did not employ any women in production positions at the Glunt plants.

27. At the time Charging Party was hired, Defendants did not provide restroom facilities for women on the plant floor at the Glunt plants but Defendants did provide such restroom facilities for men.

28. Charging Party inquired about hiring women for production positions but she was advised that Defendants did not hire women for such positions. Charging Party engaged in efforts to hire women for such positions but her efforts were either dissuaded, ignored, or rejected.

29. Defendants have engaged in a pattern or practice of denying work and employment opportunities to women job seekers who sought or were available for work with Defendants including, but not limited to, women who were proposed or identified through Charging Party's recruitment, selection, and/or hiring efforts and recommendations.

30. The work and employment opportunities denied to female job seekers included, but were not limited to, production positions described in Paragraph 18.

31. Defendants hired men for production positions even if they lacked purportedly relevant work experience, education, skill, or other qualification. Reasons asserted for why women job seekers were not recruited, considered, or selected, were a pretext for sex discrimination. Reasons asserted for why females were disfavored and men were preferred and/or were hired were a pretext and were part of the employer's continued pattern or practice of excluding women from work and employment opportunities on the basis of sex.

32. Persons holding management and high-level positions at Defendants stated that the company based its recruitment, selection, and hiring on sex, and that efforts or recommendations seeking the hiring of women had been, were, or would be, rejected on the basis of sex.

33. Charging Party was subjected to less favorable terms and conditions of employment on the basis of sex including, but not limited to, denied, minimized, or limited ability to perform or fulfill the managerial job duties attendant to her position and/or title; denied information regarding staffing and other human resource matters and/or exclusion from conferences, meetings, and other conferrals that provided favorable opportunities regarding recruitment, staffing,

selection, hiring, and otherwise impact human resource matters; lesser assignments; lesser employment opportunities for growth, development, or involvement in corporate level decision-making; reduced or limited responsibilities; isolation and hostility; and exclusion from favorable terms and conditions granted or permitted to male management.

34. Charging Party engaged in protected activity, as defined by Title VII, including when she reported to management and executive leadership the disparate terms and conditions of employment to which she had been subjected and including her opposition to the company's continued refusal to employ women in production or plant floor positions, interference with or rejecting female job seekers or applicants on the basis of sex, and retaliation against her because of her protected activity.

35. Defendants produced to the EEOC company records purporting to reflect the names and gender/sex identifications of persons selected for work or employment opportunities at the Glunt plants operated by Defendants (hereinafter "hiring records").

36. The hiring records produced show that very few persons identified as female have been hired to work for Defendants, and even fewer in production positions or functions such as those described in Paragraph 18.

37. In 2021, Charging Party's efforts resulted in Defendants hiring a woman for a welding position. The woman who was hired was qualified for the welding position.

38. Following that hire, Charging Party tried to persuade Defendants to hire another woman for a production or plant floor position, but then-manager Joe Navarra refused to hire a woman on the basis of sex.

39. In 2021, Charging Party's efforts resulted in Defendants hiring two women for project manager positions. Each of those women was qualified for the project management position.

40. Defendants subjected a class of women to less favorable terms and conditions of employment on the basis of sex including, but not limited to, the two women who were hired for project management positions or functions in 2021. Such disparate treatment included, but was not limited to denied, minimized, or limited ability to perform or fulfill the job duties attendant to their positions and/or titles; isolation and hostility; lesser assignments; denied or limited training; and exclusion from favorable terms and conditions granted or permitted to men.

41. In October 2021, Charging Party learned that Dennis Glunt would take over as Chief Executive Officer and handle high-level management functions. Glunt conducted a meeting with the male managers, which Charging Party learned addressed staffing matters. When Charging Party asked to be included in the meeting, Dennis Glunt refused to allow her to attend. Only male managers attended the meeting with Dennis Glunt and participated in the discussions, which included decision-making regarding staffing and terminating employees.

42. While the above-referenced meeting continued, Charging Party learned that Dennis Glunt and the male managers, which included Joe Navarra, fired the two women who had been hired for project management positions.

43. The women project managers were terminated on the basis of sex, and the reasons asserted for their terminations were pretextual.

44. Because some women had been hired for production or plant floor positions, including the women identified above, and because of Charging Party's continued support for and efforts to employ them and other women and her other protected activity, Defendants unlawfully

retaliated against Charging Party by subjecting her to materially adverse action including, but not limited to, reduced and/or demeaning assignments or directives; increased scrutiny, isolation, and/or hostility; belligerent or bullying behavior; exclusion from conferences, meetings, and other conferrals that provided favorable opportunities regarding recruitment, staffing, selection, hiring, and otherwise impact human resource matters; firing the women whose hire Charging Party had secured, including the women identified above who had been hired in project management positions or functions; depriving Charging Party of her management role and function and demoting her to an administrative role; and discharging or constructively discharging her.

45. Defendants elevated Joe Navarra to a Director of Operations or Chief Operating Officer position, further confirming the company's opposition to recruiting and hiring women and further subjecting Charging Party to discrimination and retaliation.

46. After Dennis Glunt and Joe Navarra took direct control over operations, as described above, Defendants discharged or constructively discharged Charging Party and other women, including the women project managers.

47. The reasons asserted for Charging Party's discharge are a pretext.

48. After discharging the two women who held project management positions or functions, Defendants hired men for project management positions.

49. After discharging or constructively discharging Charging Party, Defendants hired a man as their Director of Human Resources or human resource manager.

50. According to hiring records that Defendants produced to the EEOC, as of July 2022 the only women who remained employed at Glunt were women who held non-production positions such as accounts payable coordinator and administrative assistant.

51. According to hiring records that Defendants produced to the EEOC, of the more than 300 people who were hired for production positions from January 1, 2013 to January 1, 2023, fewer than five of them are identified as women.

52. Women job seekers have sought and/or have been available for work or employment opportunities at Glunt to such an extent that Defendants' failure to hire them in relevant positions demonstrates a pattern or practice of discrimination on the basis of sex.

53. Defendants have not retained application materials, applications, resumes, and other materials and information submitted by persons who sought work or employment opportunities with Defendants.

54. When they were asked to produce all application materials, applications, resumes, and other materials and information identifying persons who sought work or employment opportunities and that were by or about them, Defendants purportedly produced such material for the period from January 1, 2018 through June, 2023.  Defendants advised the EEOC that such production constituted all of the responsive material that they had kept and that they had in their possession, custody, or control.

55. The application materials that Defendants produced, as described in Paragraph 54, are not complete and do not reflect the names of and/or information about all persons who sought work or employment opportunities at Glunt.

56. The application materials that Defendants produced, as described in Paragraph 54, do not reflect the names of and/or information about all persons who sought work or employment opportunities after March 2022.

57. Defendants failed, in violation of Section 709(c) of Title VII, to make and preserve records relevant to the determination of whether unlawful employment practices have been or are being committed, as described above and by 29 C.F.R. pt. 1602, subparts A and C.

58. The above-stated facts, among others, demonstrate the Defendants have been engaged in a pattern or practice of discrimination on the basis of sex in recruitment, selection, and hiring, and that such pattern or practice of discrimination has adversely affected a class of women job seekers who have sought, or who have been available for, work and employment opportunities in violation of Title VII.

59. The above-stated facts, among others, demonstrate the Defendants have been engaged in a pattern or practice of discrimination on the basis of sex by subjecting a class of women workers to disparate terms and conditions of employment in violation of Title VII.

60. The above-stated facts, among others, demonstrate the Defendants have been engaged in a pattern or practice of discrimination on the basis of sex by discharging or constructively discharging a class of women workers in violation of Title VII.

61. The above-stated facts, among others, demonstrate the Defendants discriminated against Charging Party Ginger Burns on the basis of sex when they subjected her to disparate treatment, disparate terms and conditions of employment, and discharge or constructive discharge in violation of Title VII.

62. The above-stated facts, among others, demonstrate the Defendants retaliated against Charging Party Ginger Burns because she engaged in protected activity in violation of Title VII.

63. The effect of the practices complained of above has been to deprive Charging Party Ginger Burns of equal employment opportunities and otherwise adversely affect her status on the basis of sex.

64. The effect of the practices complained of above has been to deprive a class of women job seekers of equal employment opportunities and otherwise adversely affect their status on the basis of sex, by failing to recruit, select, and/or hire them for work or employment opportunities.

65. The effect of the practices complained of above has been to deprive a class of women workers of equal employment opportunities and otherwise adversely affect their status on the basis of sex by subjecting them to disparate treatment, disparate terms and conditions of employment, and discharge or constructive discharge.

66. The unlawful employment practices complained of above were and are intentional.

67. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Charging Party Ginger Burns.

68. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of a class of women job seekers and a class of women workers.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining each Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in discrimination on the basis of sex.

B.    Order each Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and equal treatment for women job seekers and women workers and that eradicate the effects of their past and present unlawful employment practices.

C.    Order each Defendant to make and preserve all records in accordance with the provisions of Section 709(c) of Title VII and otherwise to comply with recordkeeping requirements.

D.    Order Defendants to make whole Charging Party Ginger Burns and a class of women by providing backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices, including, but not limited to, rightful-place hiring, and, where appropriate, instatement or front pay.

E.    Order Defendants to make whole Charging Party Ginger Burns and a class of women by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices in amounts to be determined at trial.

F.    Order Defendants to make whole Charging Party and a class of women by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices including, but not limited to, emotional pain, suffering, humiliation, and inconvenience in amounts to be determined at trial.

G.    Order each Defendant to pay Charging Party and a class of women punitive damages in amounts to be determined at trial.

H.    Grant such further relief as the Court deems necessary and proper in the public interest.

I.       Award the Commission the costs of this action.

JURY TRIAL DEMAND

The United States Equal Employment Opportunity Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington, D.C.

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN Y. REAMS
Associate General Counsel

s/Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney
United States Equal Employment
Opportunity Commission
Philadelphia District Office

s/Kate Northrup
KATE NORTHRUP
Assistant Regional Attorney
United States Equal Employment
Opportunity Commission
Philadelphia District Office

s/Jessi Isenhart
JESSI ISENART
Trial Attorney
United States Equal Employment
Opportunity Commission
Cleveland Field Office
1240 East 9th Street, Suite 3001
Cleveland, OH 44199
Jessi.Isenhart@eeoc.gov
216-306-1121